**Masoud MAHINI, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 85–7127.**

United States Court of Appeals, Ninth Circuit.

Submitted * Nov. 13, 1985.

Decided Jan. 6, 1986.

Nancy-Jo Merritt, Corwin & Merritt, Phoenix, Ariz., for petitioner.

Marshall T. Golding, Dept. of Justice, Washington, D.C., for respondent.

Before SNEED, KENNEDY, and BOOCHEVER, Circuit Judges.

SNEED, Circuit Judge:

Masoud Mahini appeals an order from the Board of Immigration Appeals (BIA)

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

denying his application for asylum and withholding of deportation. The BIA denied Mahini's asylum claim and determined that he was ineligible for withholding of deportation. We deny the petition for review.

I.

FACTS AND PROCEEDINGS BELOW

Petitioner Masoud Mahini, a citizen and native of Iran, was given lawful permanent residence in the United States on September 6, 1979, after having entered this country as a student in December 1977. Mahini was convicted on October 20, 1980, in the United States District Court for the District of Arizona, of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b) (1982) and aiding and abetting the distribution of heroin in violation of 18 U.S.C. § 2 (1982). The court sentenced Mahini to thirteen months imprisonment and three years of special parole. After serving approximately five and one-half months in prison, Mahini was released on parole. Apparently, he was discharged from that parole on June 16, 1983.

Meanwhile, Mahini's conviction led the government to commence deportation proceedings against him pursuant to section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11) (1982). At the immigration hearing, Mahini asserted that his involvement in the crimes for which he was convicted was as an informant for the government's drug enforcement officials. Notwithstanding this assertion, the immigration judge ordered Mahini deported as charged. However, the petitioner's request to reopen the deportation proceedings to raise a claim for asylum was granted. Thereafter, the motion was transferred to the immigration court at Phoenix, Arizona.

There Mahini testified about his involvement with the secret police (SAVAK) of the former government of Iran and maintained that he would be persecuted because of his association with SAVAK if he were returned to Iran. The immigration judge denied Mahini's claim for asylum and withholding of deportation. In his view Mahini's conviction for a serious crime and the fact that there was no showing that the Iranian authorities knew of his activities in Iran made him ineligible for asylum and withholding of deportation.

Mahini then appealed to the BIA. Because it agreed with the immigration court that Mahini's conviction rendered him ineligible for withholding of deportation, the BIA dismissed the appeal without determining whether he had established either a well-founded fear or a clear probability of persecution. The BIA also concluded that Mahini's asylum claim "[did] not present an equity sufficient to overcome the adverse factor of his drug conviction." Excerpt of Record at 8. On appeal here, Mahini contends that the BIA abused its discretion both in finding him ineligible for withholding of deportation and in denying his application for asylum.

II.

DISCUSSION

The BIA's interpretation of section 243(h)(2)(B) of the Refugee Act of 1980, 8 U.S.C. § 1253(h)(2)(B) (1982), is entitled to considerable deference. *See EPA v. National Crushed Stone Association,* 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980) (citing *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)) (agency's interpretation of a statute it administers is entitled to considerable deference); *Hawaiian Electric Co. v. United States Environmental Protection Agency,* 723 F.2d 1440, 1447 (9th Cir.1984); *Castillo-Felix v. INS,* 601 F.2d 459, 465 (9th Cir.1979). In concluding that possession of heroin with intent to distribute the drug is a "particularly serious crime" and that petitioner's involvement in such activities makes him a danger to the community, the BIA adhered to its own prior rulings. *See, e.g., Campos-Perez,* B.I.A. File No. A23 222 413—Atlanta (May 29, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 27–29; *Arango-Madera,* B.I.A. File No. A23 222 710—Atlanta (July 6, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 21–23; *Placencia-*

*Hernandez,* B.I.A. File No. A24 793 655—Atlanta (Apr. 1, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 56–57.

Relying on the Board's decision in *In re Frentescu,* 18 I. & N. Dec. 244 (1982), the petitioner argues that the BIA's conclusion was erroneous. *Frentescu* involved a refugee who was convicted of burglary shortly after his entry into the United States. Although the trial judge gave Frentescu only a suspended sentence and one year of probation, the government initiated deportation proceedings. At the deportation hearing, the immigration judge found Frentescu ineligible for asylum. He based this decision on the criminal conviction for burglary—a crime involving moral turpitude. *Id.* at 246 n. 7. The BIA reversed. In its view, a "crime involving moral turpitude" was not the same as a "particularly serious crime," and Frentescu's offense was not serious enough to warrant exclusion under section 243(h)(2)(B) of the Refugee Act. *See id.* at 247.

*Frentescu* was the first case in which the Board confronted the characteristics of a "particularly serious crime" within the meaning of section 243(h)(2)(B). *See id.* at 246. Thereafter, the Board has continually found convictions for drug possession and trafficking to be particularly serious, and the offenders a danger to the community. *See Campos-Perez,* B.I.A. File No. A23 222 413—Atlanta (May 29, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 27–29; *Arango-Madera,* B.I.A. File No. A23 222 710—Atlanta (July 6, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 21–23; *Placencia-Hernandez,* B.I.A. File No. A24 793 655—Atlanta (Apr. 1, 1985) (unpublished opinion), *reprinted in* Respondent's Brief at 56–57. In reaching its decision here, the Board considered several of the factors it set out in *Frentescu:* the nature of the conviction, the type of sentence imposed, and the circumstances and facts underlying the conviction.

Although neither section 243(h) nor its legislative history make clear the meaning of the term "particulary serious crime," *see* H.R.Rep. No. 781, 96th Cong., 2d Sess. 20

(discussing provisions on asylum and withholding of deportation), *reprinted in* 1980 U.S.Code Cong. & Ad.News 141, 160, 161, the Board's interpretation is consistent with other sections of the Act. *See, e.g.,* 8 U.S.C. § 1251(b) (1982) (providing that neither a pardon nor a convicting judge's recommendation against deportation shall prevent deportation for criminal conduct when the conviction involves narcotics). In short, the Board reasonably concluded that petitioner's convictions for possession of heroin with intent to distribute and for conspiracy to aid and abet the distribution of heroin were particularly serious. Moreover, because of heroin's deleterious effect on people, the Board did not err in ruling that the petitioner constituted a danger to the community within the meaning of section 243(h)(2)(B) of the Refugee Act.

The petitioner's final contention is that the BIA erred by failing to determine his eligibility for asylum and withholding of deportation. No such determination was necessary. The Board was well within its discretion in denying Mahini's application because of his narcotics convictions.

The petition for review is denied.